IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MICHELLE WINTERS, et al. | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| MARINA DISTRICT | : | |
| DEVELOPMENT CO., LLC | : | NO. 05-5937 |

**MEMORANDUM AND ORDER**

M. FAITH ANGELL                                                                                         April 16, 2008
UNITED STATES MAGISTRATE JUDGE

      Presently before this Court are Plaintiff's motion for a new trial and Defendant's response in opposition.  For the reasons stated below, Plaintiff's motion for a new trial is denied.[1]

**I. BACKGROUND**

      Michelle Winters ("Plaintiff") alleges that on August 27, 2004, she fell while attempting to sit on a chair in front of a slot machine on the premises of the Borgata Hotel Casino and Spa ("Defendant" or "Borgata").  Plaintiff claims that she slipped and fell on a clear liquid substance.  Defendant contends that it had no actual or constructive notice of the liquid, which it will assume existed.  As a result of the accident, Plaintiff asserts she suffered severe and permanent injuries.  There were no witnesses to the fall other than Plaintiff's mother.

---

      [1]      Michelle Winters is the principal plaintiff and injured party in this case.  The second plaintiff, Robert Winters, Michelle's husband, pled a loss of consortium claim in the complaint.  However, this claim was withdrawn at the close of trial, prior to closing arguments.  N.T. 8/7/07.  Thus, I will refer throughout this opinion to Plaintiff Michelle Winters in the singular.

Prior to trial, Plaintiff filed a motion *in limine* to exclude evidence of unrelated medical conditions, which I denied. When I presented my ruling at a final pretrial conference, Plaintiff's counsel sought clarification as to Plaintiff's seizures. At that time, I determined that the seizure evidence was relevant and admissible at trial. N.T. 8/02/07 at p. 6.

Moments before the trial began, Plaintiff's counsel renewed his argument that Plaintiff's seizure evidence should not be admitted at trial. He argued that the seizure evidence was not relevant because Borgata was not going to assert a seizure caused Plaintiff to fall and this evidence was prejudicial. N.T. 8/6/07 at pp. 4-5. After hearing additional argument, I again ruled that evidence of Plaintiff's seizures was relevant and admissible. Id. at p. 6.

Both Plaintiff and Defendant introduced seizure evidence at trial. During its closing argument, Defendant told the jury that it was not contending a seizure caused Plaintiff's accident. N.T. 8/08/07 at p. 36. Instead, Borgata argued, assuming there was some accumulation of clear liquid, Plaintiff had not established liability because she did not establish that Borgata had actual or constructive notice of the existence of this condition. Borgata argued that it had "a very reasonable maintenance plan which was preventative and responsive," and that Plaintiff's fall was "a simple incident that was completely and totally not the fault of the Borgata." Id. at pp. 17, 25, 40-41.

On August 8, 2007, the jury returned a verdict for Defendant, determining that Plaintiff had not proved by a preponderance of the evidence that Borgata was negligent. Id. at p. 82.

Plaintiff now requests this Court to set aside the jury verdict and grant a new trial pursuant to Rule 59 of the Federal Rules of Civil Procedure, alleging that the Court erred in denying her motion *in limine* as relates to seizures because the seizure evidence was not relevant and its probative value was substantially outweighed by the danger of unfair prejudice, confusion of issues or misleading the jury. Plaintiff's Motion for A New Trial [Docket Entry No. 63]: Memorandum of Law In Support at p. 4.

## II.  STANDARD FOR A MOTION FOR A NEW TRIAL

To grant a movant's request for a new trial based on alleged trial error, a court must conclude that "an error was made in the course of the trial" and that the "error was so prejudicial that refusal to grant a new trial would be inconsistent with substantial justice." Coney v. NPR, Inc., No. 03-1324, 2007 WL 2571452, at *7 (E.D. Pa. Aug. 31, 2007) (quoting Brown v. Old Castle Precast E., Inc., No. 00-2549, 2003 U.S. Dist. LEXIS 1314, at *6 (E.D. Pa. Jan. 15, 2003)).  When a party alleges that "a new trial is based on the admissibility of evidence, the trial court has great discretion . . . which will not be disturbed . . . absent a finding of abuse." Id. (quoting Brown, 2003 U.S. Dist. LEXIS 1314, at *6).  A new trial will not be granted for an error that "does not affect the substantial rights of the parties" because such error is harmless. Id. (quoting Fed. R. Civ. P. 61; Fed. R. Evid. 103(a)).  A court determines whether error is harmless by considering the centrality of the evidence and whether including or excluding the evidence was prejudicial. Id. The party contending that the inclusion or exclusion of evidence was in error has the burden of showing that the court ruling affected the result of the trial. Id. at *8.

**III.  DISCUSSION**

Under the Federal Rules of Evidence, "relevant evidence is evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."  Fed. R. Evid. 401.  A trial judge has "broad discretion" in determining the relevance of evidence.  Mulholland v. Hoffer, No. 04-5981, 2007 WL 1276915, at *17 (E.D. Pa. May 1, 2007)(court concluding that it did not abuse its discretion in admitting evidence of the plaintiff's health and physical condition before her accident).

Plaintiff claims that the seizure evidence was not relevant because it had "no probative value whatsoever to the injuries" from the accident, and because "the jury was left to speculate as to the relevancy of the *other seizures* and how they fit into the picture."  Plaintiff's Motion for A New Trial [Docket Entry No. 63]:Memorandum of Law In Support at pp. 3, 4 (emphasis added).[2]

The seizure evidence was relevant in this case because Plaintiff had a history of seizures both before and after the incident.  Plaintiff began suffering from seizures about two months

---

[2] It is unclear what Plaintiff means when she refers to the "other seizures," as no explanation is provided.  It is possible Plaintiff meant to distinguish between the seizures that occurred at the Borgata and all other seizures, but that seems unlikely given that if the former were relevant, the latter would also be relevant.  As a result, I will treat "the other seizures" as referring to all of Plaintiff's seizures.

In addition, Plaintiff's latter claim – that the jury was left to speculate – appears to be a Federal Rules of Evidence 403 argument, as Plaintiff seems to contend that the potential for extensive speculation essentially misled the jury.  See Fed. R. Evid. 403 (stating that relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of . . . misleading the jury").  In her memorandum, Plaintiff has not cited to any case law or statute indicating that the relevance of evidence is contingent on the degree of possible speculation among the jury members that results from the introduction of that evidence.  Plaintiff later reuses the same argument in her claim that the seizure evidence was unfairly prejudicial.  Accordingly, I will address this argument when discussing the claim of unfair prejudice, infra.

before she fell at the Borgata. N.T. 8/06/07 at pp. 113-14. She suffered about twenty seizures prior to this incident. Id. at pp. 114-15. While having a seizure, Plaintiff would experience some visual changes. Id. at p. 116. Fifteen days before the incident, Plaintiff was admitted to Pennsylvania Hospital after complaining of chest pain. Id. at pp. 54-55, 117. During her hospitalization, and while getting out of the shower, Plaintiff felt that her vision was closing in on her and that she was going to fall backwards. Id. at p. 116. After being discharged from the hospital and returning home, and before the incident at the Borgata, Plaintiff felt her vision closing in, lost consciousness, and fell down the last two steps of a stairway. Id. at pp. 55, 57, 116.

During opening argument, Plaintiff's counsel described these episodes as "psychogenic seizures" provoked by anxiety and accompanied by chest pain and blacking out, and noted that they caused Plaintiff to fall on one occasion before the Borgata incident. N.T. 8/6/07 at pp. 23-24.

Prior to the incident at the Borgata, the episodes were severe enough for: (I) Plaintiff to be hospitalized at Pennsylvania Hospital for five days for evaluation, id. at p. 116; (ii) Plaintiff to be wearing a halter monitor to check for irregular heartbeats at the time of the incident, id. at p. 121; (iii) Plaintiff's mother to remain with Plaintiff at her home prior to the incident in case Plaintiff suffered a seizure, N.T. 8/7/07 at p. 63; and (iv) Plaintiff to have her mother drive them to the
Borgata on the night of the incident, N.T. 8/6/07 at p.122. Within one week before the Borgata incident, Plaintiff was taking the following medications: Effexor, Percocet, ASA, and Ibuprofen. N.T. 8/7/07 at p. 45.

Plaintiff also suffered seizures after the incident at the Borgata. In fact, Plaintiff experienced a seizure immediately after the incident when Borgata personnel placed her in a wheelchair. N.T. 8/6/07 at pp. 52-53, 59, 125. When Borgata personnel asked for her medical history, Plaintiff told them about her seizures. N.T. 8/7/07 at pp. 119-20. Plaintiff also had a seizure at the Borgata's Medical Unit, N.T. 8/6/07 at p. 59, and at the Atlantic City Medical Center, id. at p. 60. About two weeks after the incident, Plaintiff was evaluated by two neurologists for seizures at Thomas Jefferson University Hospital on September 9, 2004. N.T. 8/7/07 at p. 26. About a month after the incident, Plaintiff was hospitalized in the epilepsy ward at the same hospital from September 28, 2004 through October 4, 2004 for evaluation of her seizures. N.T. 8/6/07 at pp. 56, 117-18.; N.T. 8/7/07 at pp. 27-28.

       Plaintiff's seizure history, immediately before and after the Borgata incident, was clearly relevant. It was relevant as one potential cause of Plaintiff's accident. During closing argument, Defense Counsel argued that he was not suggesting the evidence clearly established that Plaintiff had a seizure at the time of the incident and that was what caused her to fall. He did argue, however, that the seizure evidence was relevant because Plaintiff "was on various medications at the time of this incident, which might affect [her] perception." N.T. 8/8/07 at pp. 36-37.

       The seizure evidence was also relevant in the context of the scope of Plaintiff's purported injuries. Plaintiff claimed that, as a result of the fall, she suffered a lower back injury and sustained lumbar radiculopathy. N.T. 8/6/07 at pp. 17, 26. Plaintiff stated she was taken to the Atlantic City Medical Center after the incident because her back hurt and she was "in a lot of pain." N.T. 8/6/07 at p. 60. During cross-examination, however, Defense Counsel showed Plaintiff an Atlantic City Medical Center emergency room record which listed the reason for her

visit as "convulsions," not back pain.  Id. at p. 126.  Cross-examination of Plaintiff further revealed that, while being evaluated for seizures at Thomas Jefferson University Hospital about two weeks after and then about a month after the incident and asked about her medical history, Plaintiff did not mention her fall at the Borgata nor any injuries to her back or any back problems.  N.T. 8/7/07 at pp. 26-28, 29.

Evidence of Plaintiff's seizure history was thus relevant to Plaintiff's claim of lumbar radiculopathy as a result of her fall at the Borgata and, therefore, to her credibility.  It was Defendant's position, during closing argument, that Plaintiff was not seriously hurt as a result of her fall at the Borgata.  In support of this position, Defendant pointed to inconsistencies between Plaintiff's trial testimony and, *inter alia*, the Atlantic City Medical Center emergency room records and the Thomas Jefferson University Hospital medical records which did not make any reference to any back pain or problems. N.T. 8/8/07 at pp. 37-38.

The seizure evidence was not, as Plaintiff argues, "unfairly prejudicial as it had an undue tendency to suggest a decision on an improper basis based on speculation, conjecture, innuendo and reliance on whispered unfair stereotypes of seizures."  Plaintiff's Motion for A New Trial at p. 3.

Relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury."  Fed. R. Evid.403.

In her memorandum, Plaintiff claims that the introduction of seizure evidence was unfairly prejudicial, confused the issues, and misled the jury because (I) the jury was "left to speculate as to how Plaintiff's seizure conditions are related to the accident," and (ii) it "caused the jury to speculate that the injuries alleged were caused by Plaintiff's seizures," despite the fact

that there was "no evidence whatsoever" linking the seizure to the accident. Id.: Memorandum of Law In Support at p. 5. Plaintiff also argues that (iii) the seizure evidence was unfairly prejudicial because, if the purpose of introducing the seizures was to show that a subsequent hospital visit was for a medical condition other than one related to the accident at the Borgata, Defendant did not need to reference the seizures. Id. at 4-5.

The first two claims essentially argue that because Defendant told the jury it was not arguing that a seizure caused the accident, the jury was left to speculate about the relevance of the seizures, and that speculation might lead to the conclusion that the seizure caused the accident. Evidence cannot be deemed unfairly prejudicial merely because the jury has room for some speculation as to the evidence's exact relevance to the accident in question. If anything, Defendant's statement that he was not arguing that a seizure caused the accident would have eliminated or severely diminished any chance that the jury would have speculated that a seizure was in fact the cause. Nor was the seizure evidence itself speculative, but rather was based on medical records and Plaintiff's own testimony. Its probative value was not substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury.[3]

I conclude that the jury was properly permitted to consider the seizure evidence in deciding both liability and damage issues. Accordingly, Plaintiff's motion for a new trial must be denied.

---

[3] If Defendant's *sole* purpose for introducing the seizures had been to show that Plaintiff attended post-accident medical appointments for reasons other than injuries related to the accident, reference to Plaintiff's seizures at trial might have been prejudicial. However, as discussed in the text above, the seizure evidence was relevant for other reasons.

AND NOW, this 16th day of April, 2008, for the reasons stated in the foregoing memorandum, **IT IS ORDERED** that Plaintiff's Motion for a New Trial [Docket Entry No. 63] is **DENIED.**

BY THE COURT:

S/M. FAITH ANGELL
M. FAITH ANGELL
UNITED STATES MAGISTRATE JUDGE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA
Robert N.C. Nix Federal Building
900 Market Street, Suite 211
Philadelphia, PA    19107

**Chambers of**
**M. FAITH ANGELL**                                P:   (215) 597-6079
 United States Magistrate Judge                    F:   (215) 580-2165

*FAX / MAIL COVER SHEET*

**CASE NO.**    05-5937

**TODAY'S DATE**: April 16, 2008            **LAW CLERK'S INITIALS**: JJK

**VIA FAX:**

| NAME | FAX NUMBER |
|---|---|
| 1.  Gregory J. Kowalski, Esq./Michael O. Pansini, Esq. | 215-732-7872 |
| 2.  Mitchell S. Berger, Esq. | 215-564-1301 |